UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE TOWN RESIDENCES LLC,

          Plaintiff,

v.

T-MOBILE US, INC.,

          Defendant.

_____/

Case No. 2:24-cv-13131

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF No. 28)**

This case arises from a dispute about the terms of a lease agreement concerning Defendant T-Mobile US, Inc.'s ("T-Mobile") cellular tower atop Plaintiff Town Residences LLC's ("Town Residences") building in downtown Detroit, Michigan. Town Residences sued T-Mobile for various tort and contract violations, and T-Mobile now moves to dismiss most of these claims. As explained below, T-Mobile's motion will be granted for all claims except breach of contract.

## I. BACKGROUND

The following factual allegations come from Town Residences' amended complaint. ECF No. 25. At the motion-to-dismiss stage, these facts must be accepted as true with all reasonable inferences drawn in Town Residences' favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the pleadings, this Court may

also consider documents that are public record or that are referred to and integral to the claims, such as the lease agreement and "invoice letter" in dispute. *See Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

In December 2007, the former owners[1] of the building at 1511 First Street in Detroit, Michigan ("the Building") entered a lease agreement ("the Lease") with Metro PC Inc. ("Metro PC") which allowed Metro PC to use "space on and within" the Building to operate a cellular tower. ECF No. 25 at PageID.179–80. In exchange, Metro PC paid the owners rent and electrical utility costs. *Id.* at PageID.180. For the utilities, Section Ten of the Lease required Metro PC to directly reimburse the owners for the amount of electricity it used. ECF Nos. 25-1 at PageID.202; 25 at PageID.180. In order to record the amount of Metro PC's electricity usage to reimburse the owners, "sub-metering was installed." ECF No. 25 at PageID.180.

In March 2010, the parties agreed to amend Section Ten. *Id.* The amendment established a flat, monthly utility fee of $240, subject to adjustments based on actual usage. The amended Section Ten detailed the adjustment process as follows:

> Upon the request of either party, the requesting party can review utility invoices and other documentation received by Lessor to substantiate Lessee's usage and the requesting party may reconcile the Utility Fee with the actual electrical charges used by Lessee based upon the average kilowatt-hour rate paid by Lessor or the property owner….Lessee shall remit any underpayment of the Utility Fee to Lessor within ten (10) days following Lessee's receipt of a written

---

[1] These former owners were Ivey & Associates LLC and Detroit Town Apartments LLC. ECF No. 25 at PageID.179.

invoice   and   sufficient   documentation   to   substantiate   such underpayment.

ECF No. 25-2 at PageID.214.

Later, the former owners assigned the Lease's rent-collection rights to Crown Castle LLC ("Crown Castle"), but they kept the right to collect Metro PCS's utility payments. ECF No. 25 at PageID.180. Then, in 2013, Metro PCS merged with, and subsequently became, Defendant T-Mobile. *Id.* The following year, Town Residences purchased the Building as the new "successor and interest … to the" Lease. *Id.* at PageID.181.

After acquiring the Building, Town Residences assumed that the electric utility provider was billing T-Mobile directly for its electricity usage. *Id.* Town Residences says it assumed this fact for several reasons: (1) it "did not receive any payments for electrical service" from T-Mobile; (2) T-Mobile's other utility equipment—a backup generator that ran on natural gas—had its own gas meter that billed directly to T-Mobile; and (3) "the cell tower equipment was in a highly restricted area…through the Building's mechanical mezzanine floor, which is clearly marked with hazard signs warning of radiofrequency radiation." *Id.*

But during a renovation in April 2023, a contractor for Town Residences discovered bypass equipment installed in the restricted area's elevator panel "which provided electrical power directly to the T-Mobile cell tower" from the main power supply of the Building. *Id.* at PageID.182. The elevator panel also contained "a

- 3 -

handwritten reference to 'T-Mobile'" with "an out-of-service submeter on the side of the" panel. *Id.* Because it appeared that this bypass violated the American Society of Mechanical Engineers (ASME) Code's prohibition on nonelevator-related equipment being in an elevator-machine room, Town Residences spent $11,911.52 to have the submeter removed and proper submetering equipment installed in another location. *Id.* at PageID.182–83 (citing "ASME Code section 2.8.1").

"After discovering the illegal bypass [equipment] and in accordance with Section Ten" of the Lease, Town Residences sent a letter in November 2023 notifying T-Mobile "of an underpayment of utilities and demand[ing] payment" of $127,045.81 for "repairs and maintenance costs," interest, attorneys' fees, and estimated electricity costs from July 2014 through March 2024. ECF No. 25 at PageID.184; ECF No. 25-3 at PageID.216. In response, counsel from Crown Castle contacted Town Residences, to whom, it turned out, T-Mobile had been paying the flat monthly fee of $240 since July 2014. ECF No. 25 at Page ID.185. The total amount that Crown Castle had received from T-Mobile was a lump sum of $33,120. *Id.* at PageID.186.

Town Residences states that through its communications with Crown Castle "and in accordance with Section Ten" of the Lease, Town Residences provided T-Mobile with a detailed accounting of T-Mobile's actual utility usage from April 2023 to March 2024 at 11 to 13 cents per kilowatt-hour. *Id.* Relying on this data, Town

Residences then estimated T-Mobile's utility usage since July 2014 (hereafter "extrapolated usage"). *Id.*; *see also* ECF No. 25-4. Town Residences later "provided T-Mobile with a detailed account of" the extrapolated usage from July 2014 to March 2023, and actual usage from April 2023 to March 2024, although this accounting was not included with the original November 2023 letter. ECF No. 25 at PageID.185.

In April 2024, T-Mobile began paying Town Residences for its electricity usage. *Id.* at PageID.186. And in December 2024, Crown Castle returned to T-Mobile the lump sum ($33,120) of the monthly utility payments that it had received since July 2014. *Id.* Town Residences claims that it is entitled to that lump sum because of the terms in Section Ten of the Lease. *Id.* But T-Mobile did not provide that lump sum to Town Residences. *Id.* So, in November 2024, Town Residences sued T-Mobile.[2] ECF No. 1.

In February 2025, T-Mobile moved to dismiss the complaint. ECF No. 24. Town Residences then filed an amended complaint in March 2025. ECF No. 25. In its amended complaint, Town Residences raised statutory and common-law conversion claims (Counts I and II), an independent "fraudulent concealment" claim (Count III), breach of contract (Count IV), and unjust enrichment (Count V). ECF No. 25 at PageID.183, 187–90, 193. Town Residences also asserts that T-Mobile

---

[2] Town Residences originally sued both T-Mobile and Crown Castle. *See* ECF No. 1. However, on February 19, 2025, Town Residences voluntarily dismissed its claims against Crown. ECF No. 23.

fraudulently concealed its conversion and breach of contract such that the statute of limitations should be tolled. *See id.* at PageID.187, 190, 194.

As for damages for Counts I-IV, Town Residences asserts it is entitled to $98,549 for electricity usage, $11,911.52 for new equipment installation costs, and attorneys' fees. *Id.* at PageID.190. For Count V, Town Residences seeks the $33,120 lump sum that Crown Castle returned to T-Mobile. *Id.* at PageID.195. Town Residences further asserts that it is entitled to triple the amount of actual damages under Michigan law. *Id.* at PageID.188, 195–96.

On March 27, 2025, T-Mobile moved for a partial dismissal, seeking to dismiss Counts I, II, III, and V in their entirety. ECF No. 28. As for Count IV, T-Mobile argues that it "should be dismissed with prejudice to the extent it seeks recovery for alleged breaches" based upon extrapolated usage because Town Residences failed to satisfy the Lease's conditions precedent of sending T-Mobile an invoice and documentation. *Id.* at PageID.257–58, 286–89. But to the extent Town Residences could recover on this claim, T-Mobile argues that the statute of limitations restricts recovery only to the monthly fees from December 2018 through March 2024. *Id.* at 258, 284–86. Town Residences responded, ECF No. 29, and T-Mobile replied, ECF No. 30.

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Otherwise, the Court must grant the motion. *Twombly*, 550 U.S. at 570.

Although a Rule 12(b)(6) motion "is generally an inappropriate vehicle for dismissing a claim based upon on the statute of limitations[,] . . . sometimes the allegations in the complaint affirmatively show that the claim is time barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Thus, "[i]f the allegations, for example, show that relief is barred by the applicable statute of

- 7 -

limitations, the complaint is subject to dismissal for failure to state a claim[.]" *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## III. DISCUSSION

### A. Conversion (Counts II and I)

Town Residences alleges both statutory and common-law conversion by claiming that T-Mobile violated its duties to refrain from accessing and converting the elevator electrical panel and system to steal electricity. ECF No. 25 at PageID.187–90. T-Mobile argues that these tort claims should be dismissed because (1) the Building's electrical system is real property that cannot be converted; and, alternatively, (2) because any such claim arises not from a common-law duty, but a contractual duty. ECF No. 28 at PageID.272, 275. As explained below, Town Residences' conversion claims do not survive the motion to dismiss.

*1. Common-Law and Statutory Conversion*

Under Michigan common law, "[c]onverted property is property over which any distinct act of dominion has been wrongfully exerted over another person's property." *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 392 (E.D. Mich. 2000). To bring a common-law conversion claim, the complaint must allege facts in support of "any distinct act of dominion wrongfully exerted over another person's property in denial of or inconsistent with his rights therein." *P.R.A. Co. v. Arglass Yamamura SE, LLC*, 768 F. Supp. 3d 862, 877 (E.D. Mich. 2024) (internal quotations

- 8 -

Case 2:24-cv-13131-SKD-KGA   ECF No. 31, PageID.368   Filed 02/06/26   Page 9 of 31

omitted) (quoting *Aroma Wines*, 871 N.W.2d at 144). Such wrongful acts of dominion over the property include intentional dispossession, intentional destruction or alteration, use without authority, refusal to surrender, reception with intent to personally acquire, transactional disposition with intent transfer proprietary interest, or misdelivery. *Id.*

Statutory conversion occurs when another person "convert[s] property *to the other person's own use*." MICH. COMP. LAWS § 600.2919a(1)(a) (emphasis added). This additional element required by Michigan statute "creates a cause of action wholly separate from the traditional tort of conversion . . . [by also] requir[ing] the plaintiff to prove that the defendant converted the property to his or her 'own use.'" *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 581 (6th Cir. 2016) (citing *Aroma Wines & Equip., Inc. v. Colom. Distrib. Servs., Inc.*, 871 N.W.2d 136, 146–48 (Mich. 2015)). *see also In re Wylie*, 665 B.R. 144, 165 (Bankr. E.D. Mich. 2024) (listing statutory conversion's elements as "(1) the same elements that exist for common law conversion under Michigan law…;' plus (2) 'the defendant employed the converted property for some purpose personal to the defendant's interests.'") (quoting *Aroma Wines*, 871 N.W.2d at 148)).

Here, Town Residences appears to satisfy the elements for common-law and statutory conversion. Town Residences provided reasonably plausible facts that T-Mobile intentionally altered the Building's electrical system and used it without

authority. ECF No. 25 at PageID.189 (claiming that T-Mobile "wrongly and secretly exerted dominion over the Building electrical system in denial of or inconsistence with the rights of Town Residences"). *See P.R.A. Co.*, 768 F. Supp. 3d at 877. Town Residences also sufficiently pleaded that T-Mobile (1) wrongfully exercised dominion over "the elevator electrical system and other parts of the electrical system" by installing the bypass without Town Residences' consent or knowledge (2) "for the purpose of stealing Building electricity for its own use." ECF No. 25 at PageID.187. *See In re Wylie*, 665 B.R. at 165.

### *2. Real vs. Personal Property*

However, both statutory and common-law conversion involve "distinct act[s] of dominion wrongfully exerted over another's *personal* property." *In re Wylie*, 665 B.R. at 165 (citing *Aroma Wines*, 871 N.W.2d at 138, 141, 148). Well-established in Michigan law is the principle "that real property cannot be converted." *In re Silver*, 647 B.R. 897, 916 (E.D. Mich. 2022) (citing *Alisa A. Peskin-Shepherd, PLLC, v. Blume*, 974 N.W.2d 835, 835–36 (Mich. 2022)). According to *Black's Law Dictionary*, "real property" is "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land," which includes buildings. *Property*, BLACK'S LAW DICTIONARY (12th ed. 2024). In contrast, "personal property" is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Id.*

A fixture is considered real property under Michigan common law. *See In re Joseph*, 450 B.R. 679, 687–88 (E.D. Mich. 2011) (collecting Michigan state law cases). Property is a fixture if (1) the property is annexed to the realty, (2) the property's adaptation of or application to the realty is appropriate, and (3) the property was intended to be a permanent accession of the realty. *See Petition of Johns-Manville Sales Corp.*, 88 F.2d 520, 521 (6th Cir. 1937); *see also People v. Fox*, 591 N.W.2d 384, 391 (Mich. Ct. App. 1998). Adaptation or application refers to the utility that the property serves for the realty, and intention may be derived from the circumstances surrounding the property's attachment. *See Wayne Co. v. Britton Trust*, 563 N.W.2d 674, 678–79 (Mich. 1997). For example, a building's heating system is considered a fixture—and, therefore, real property—"by the very nature of the equipment, the manner of its annexation, and the [purpose] for which it was installed." *Wood Hydraulic Hoist & Body Co. v. Norton*, 257 N.W. 836, 838 (Mich 1934); *see Matter of Cliff's Ridge Skiing Corp.*, 123 B.R. 753, 760 (W.D. Mich. 1991) (recognizing the Michigan Supreme Court's holding that heating system "equipment was a fixture and component part of [a] building").

Applying the three-part fixture test to these facts, the "electrical system" that Town Residences consistently asserted was converted, *see* ECF No. 25 at PageID.188, is a fixture just as a building's heating system is. *See Matter of Cliff's Ridge*, 123 B.R. at 760. Thus, there can be no conversion claim. *See id.*; *see also In*

*re Silver*, 647 B.R. at 916. Indeed, the electrical system at issue here was annexed to the Building's elevator panel, and the system's adaption of the Building was intended to be permanent to provide basic and necessary utilities to the Building. *See Petition of Johns-Manville Sales Corp.*, 88 F.2d at 521; *see also Matter of Cliff's Ridge Skiing Corp.*, 123 B.R. at 760.

In its response brief, Town Residences attempts to reframe its claim as conversion of the electricity itself. *See* ECF No. 29 at PageID.327 (alleging that "[t]he electricity which [T-Mobile] stole is not permanently attached to the Building and cannot be considered a fixture"). But a response brief cannot cure a defective complaint. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot … amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."); *see also Geller v. Michigan*, No. CV-17-13233, 2019 WL 2150393 at *7 n. 5 (E.D. Mich. Apr. 26, 2019) ("Courts have recognized that a plaintiff cannot use his response to a motion to dismiss as a vehicle to cure the defects in an operative complaint."). Therefore, its original allegations that T-Mobile converted the electrical system are what is properly before this Court, and because the system is a fixture, it is real property that cannot be converted. *See In re Joseph*, 450 B.R. at 688.

For these reasons, Town Residences' conversion claims (Counts I and II) will be dismissed. *See Alisa A. Peskin-Shepherd, PLLC*, 974 N.W.2d at 835–36. Accordingly, Town Residences may not recover triple damages under Michigan's statute governing damages from conversion. *See* MICH. COMP. LAWS § 600.2919a(1)(a).

### B. Fraudulent Concealment (Count III)

In Count III, Town Residences raises fraudulent concealment as a standalone count without reference to a statute that permits such a cause of action. *See* ECF No. 25 at PageID.190–92. Under Michigan law, fraudulent concealment can toll the statute of limitations. *See* MICH. COMP. LAWS § 600.5855 (permitting a plaintiff to bring suit within two years after the plaintiff "discovers, or should have discovered," a cause of action if the plaintiff alleges that the defendant "fraudulently conceal[ed] the existence of the claim or the identity of any" liable persons). Although Town Residences also raises fraudulent concealment for its other claims, this statute does not provide a basis for an independent, substantive claim. *See Winterhalter v. Watson Wyatt & Co.*, 87 F. App'x 513, 517 (6th Cir. 2004) (analyzing what the appellants had to show in order "to successfully advance the fraudulent concealment provision, and avoid the statute of limitations bar"); *see also Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1335–36 (6th Cir. 1995) (treating fraudulent concealment as an equitable-tolling mechanism not an independent claim). Because Town Residences does not

provide any legal authority for bringing fraudulent concealment as an independent claim, this claim will be dismissed.

### C. Breach of Contract (Count IV)

In Count IV, Town Residences alleges that T-Mobile breached its contractual obligations under Section Two by installing damaging equipment without authorization and under Section Ten by not paying for its electrical utility usage. ECF No. 25 at PageID.193–95. T-Mobile argues that Town Residences' breach of contract claim under Section Two should be wholly dismissed by the statute of limitations. ECF No. 28 at PageID.257–58, 284–89. It also argues that its Section Ten claim should be partially dismissed in that any damages must be limited to only the $240 monthly rate without the additional extrapolated usage costs, because Town Residences failed to satisfy conditions precedent in Section Ten of the Lease to request actual usage costs. *See id.* at 257–58, 286–89.

As explained below, Town Residences' claim under Section Two satisfies the fraudulent-concealment requirements so as to avoid the statute of limitations bar. But T-Mobile is correct that the statute of limitations precludes claims for breaches occurring before December 2018 because there was no fraudulent concealment of the breach-of-contract claim under Section Ten. Finally, Town Residences' pursuit of damages for actual usage will not be dismissed at this stage because whether Town Residences satisfied the conditions precedent of the Lease raises questions of fact.

- 14 -

To state a claim for breach of contract under Michigan law, a claimant's pleadings must include facts that plausibly demonstrate: "(1) there was a contact; (2) which the other party breached; and (3) thereby resulting in damages to the party claiming breach." *Acrisure, LLC v. Hudak*, 618 F. Supp. 3d 642, 647 (W.D. Mich. 2022) (quoting *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019)).

Town Residences plausibly alleges that T-Mobile breached Sections Two and Ten of the Lease by claiming that T-Mobile installed equipment in violation of ASME Code that caused damage to the building and that T-Mobile did not pay for its utility usage between July 2014 to March 2024, respectively. *See* ECF No. 25 at PageID.194; *see also Acrisure, LLC*, 618 F. Supp. 3d at 647; *Bell At. Corp.*, 550 U.S. at 555; *see Lambert*, 517 F.3d at 439. Thus, the issues before this Court concern the statute of limitations and conditions precedent.

### 1. Statute of Limitations

T-Mobile argues that Town Residences cannot recover on its Section Two claim because the equipment installment allegedly occurred before July 2014, far exceeding the six-year limitations period. ECF No. 28 at PageID.285. Regarding Section Ten, T-Mobile argues that Town Residences cannot seek utility payments from July 2014 through March 2024 because the statute of limitations only allows recovery for six years and because T-Mobile did not take affirmative acts to

constitute fraudulent concealment that would toll the statute of limitations under MICH. COMP. LAWS § 600.5807(9). *Id.* at PageID.285–86. Additionally, T-Mobile states that Town Residences "knew, or should have known, of its cause of action by July 2014, when it was not receiving Utility Fees." *Id.* at PageID.286. Therefore, T-Mobile argues that Town Residences can only potentially recover from December 2018 through March 2024. *Id.* at PageID.287–88. This Court finds that the statute of limitations is tolled for the Section Two breach, but not for the Section Ten breach.

### *a. Legal Standard*

Under Michigan law, the six-year statute of limitations begins accruing "at the time the wrong upon which the claim is based was done regardless of the time when damages results." MICH. COMP. LAWS § 600.5827. And for installment contracts, these claims "accrue as each installment falls due." MICH. COMP. LAWS § 600.5836. But these limitations can be tolled if there was a fraudulent concealment of the wrongdoing. MICH. COMP. LAWS § 600.5855.

Specifically, "fraudulent concealment is defined as the employment of an artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *English v. Bousamra*, 9 F. Supp. 2d 803, 810 (W.D. Mich. 1998) (internal quotation marks and citations omitted), *aff'd* 188 F.3d 507 (6th Cir. 1999). "The doctrine of fraudulent concealment allows equitable tolling of the statute of limitations where 1) the

defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Fillinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 341 (6th Cir. 2015) (internal quotation marks and citation omitted).

At the motion to dismiss stage, the plaintiff must plead fraudulent concealment with particularity, pursuant to Civil Rule 9(b), by alleging "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Id.* (internal quotation marks and citation omitted). In effect, to prevail, the "plaintiff must prove that the defendant's attempts to mislead the plaintiff actually succeeded." *Hill*, 65 F.3d at 1338. But because the plaintiff has not yet had the benefit of discovery, the Sixth Circuit advises that district courts construe allegations of fraudulent concealment liberally and in the plaintiff's favor at the motion to dismiss phase. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 448 (6th Cir. 2012).

A defendant's deceptive conduct alone does not satisfy the requirements for an equitable tolling because "the essential element in stating a cause for fraudulent concealment is concealment of the *existence* of the claim, as contrasted with concealment of the evidence necessary to prove such a claim." *Gomez v. Great Lakes Steel Div., Nat'l Steep Corp.*, 803 F.2d 250, 255 (6th Cir. 1986); *see also English*, 9

- 17 -

F. Supp. 2d at 811 (holding that the plaintiff did not meet the fraudulent concealment requirements because defendant deceptively hiding who was driving the vehicle did not prevent the plaintiff from bringing his automobile accident claim). In other words, if the "potential for liability" is discoverable from the beginning, the defendant's attempt to mislead has not successfully concealed the existence of the plaintiff's claim to constitute fraudulent concealment. *See English*, 9 F. Supp. 2d at 811. (citing *Witherspoon v. Guilford*, 511 N.W.2d 720 (Mich. Ct. App. 1994)).

Likewise, concealing details of evidence does not invoke MICH. COMP. LAWS § 600.5855—even when those details establish, or seem to establish, a cause of action—because the statute only applies to "fraudulent concealment of a cause of action." *Kikos v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 526 F. Supp. 110, 117 (E.D. Mich. 1981) (citing *Echols v. Chrysler Corp.*, 633 F.2d 722, 725 (6th Cir. 1980)). "An affirmative act or misrepresentation is [also] required [because] 'mere silence on the part of the defendant is not enough.'" *Est. Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 395 (6th Cir. 2015) (citing *Draws v. Levin*, 52 N.W.2d 180, 183 (Mich. 1952)).

As for the due diligence factor, the plaintiff must also show "that they acted diligently to discover any facts unknown to them." *Winterhalter*, 97 F. App'x at 519. Diligence further entails "a duty to investigate" information pertinent to an essential element of a claim. *See Hill*, 65 F.3d at 1339 (holding that the petitioners "had a duty

to investigate whether" the defendant had acted with discriminatory motivation in an employment suit and that the petitioners' "failure to do so demonstrates a lack of due diligence"). However, the plaintiff does not have to show that she did something specific to pursue her claims before having sufficient notice of a potential injury. *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475–76 (6th Cir. 2013). Instead, this factor contemplates whether the plaintiff acted as a reasonably prudent person if the plaintiff has "sufficient information to trigger their duty to investigate" potential fraud. *Id.* at 476.

### b. Section Two Analysis

Under Section Two of the contract, T-Mobile was prohibited from installing equipment that is reasonably likely to damage or impair the Building or installing simply without authorization. *See* ECF No.25-1 at PageID.199. According to Town Residences, T-Mobile breached this provision and wrongfully concealed its breach by installing equipment in a highly restricted area. ECF No. 25 at PageID.193–95. At this motion to dismiss stage, this Court finds that Town Residences has presented plausible facts to show that equitable tolling on this count is appropriate.

Considering the factors in *Fillinger*, Town Residences sufficiently pleaded that T-Mobile concealed its unauthorized bypass equipment installation by alleging that T-Mobile took affirmative acts to hide the bypass equipment in an elevator panel in a restricted area. *See* 624 F. App'x at 341; *see also Abdullah*, 601 F. App'x at 395;

ECF No. 25 at PageID.194 (alleging that T-Mobile concealed its underlying conduct by installing the bypass equipment "in a highly restricted area behind two electrical panels within the elevator switch gear where it could only be discovered by a skilled trades person").

Town Residences also sufficiently pleaded that it was prevented from discovering the cause of action because the location where T-Mobile installed the bypass equipment was a sequestered area that only an elevator technician who was specifically looking into the elevator panel could have discovered the bypass equipment. *See Fillinger*, 624 F. App'x at 341. And Town Residences' pleading on this factor is particular because it described in detail how the equipment's location would only be discoverable by a skilled tradesperson and in an area "where it is assumed that all electrical circuits directly service the elevator[,] thereby reducing the likelihood of detection." ECF No. 25 at PageID.194; *see Fillinger*, 624 F. App'x at 341 (requiring particular facts about the time, place, and content of the alleged fraudulent conduct). It further satisfies the particularity requirement by alleging fraudulent intent to use Town Residences' electricity without detection.[3] *See Fillinger*, 624 F. App'x at 341; *see also* ECF No. 25 at PageID.194 ("By connecting

---

[3] Although this allegation may be in tension with the apparent fact that T-Mobile *was* paying the monthly utility fee—but to Crown Castle—this claim should be allowed to proceed forward at this motion to dismiss phase even in the fact of "some question as to the depth and scope of [Town Residences'] investigation." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 448 (6th Cir. 2012).

directly to Town Residences' electrical circuit, T-Mobile made it extremely difficult to discover because there was no way to independently measure T-Mobile's electricity usage[.]'").

Finally, Town Residences' pleadings satisfy the due diligence factor because Town Residences took steps to investigate—culminating in a letter to T-Mobile in November 2023—after it had notice of the wrongfully installed bypass equipment, which occurred when it conducted repairs and renovations on the Building in April 2023. *See Fillinger*, 624 F. App'x at 341; *see also Lutz*, 717 F.3d at 475–76. For these reasons, this Court finds that Town Residences sufficiently pleaded fraudulent concealment for the Section Two breach of contract claim, and this claim will be allowed to proceed.

### c. Section Ten Analysis

For Section Ten, Town Residences allegations of fraudulent concealment rely on the same underlying actions for Section Two regarding the hidden location of the bypass equipment. ECF No. 25 at PageID.194–95. T-Mobile argues that it took no affirmative acts to conceal a breach of Section Ten and that Town Residences should have known of the breach because it was not receiving utility payments. ECF No. 28 at PageID.285–86. This Court finds that Town Residences did not plead with particularity affirmative actions by T-Mobile to conceal the breach of Section Ten.

As stated, a plaintiff alleging fraudulent concealment must plead that "1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Fillinger*, 624 F. App'x at 341 (internal quotation marks and citation omitted). Here, Town Residences fails to satisfy the first factor because its concealment allegations pertain to the equipment installation rather than the failure to pay utilities.

Although Town Residences argues that the two are related, Town Residences was aware that it was not receiving utility payments and made the assumption that T-Mobile was being billed directly. In this sense, T-Mobile did not attempt to hide the fact that it was not paying Town Residences. At best, the concealment of the bypass equipment is a concealment of evidence, not of the existence of a claim. *See Kikos*, 526 F. Supp. at 117. Accordingly, Town Residences has not pleaded that T-Mobile concealed its breach of Section Ten. *See id.* To this end, Town Residences also did not exercise due diligence because it was on notice of a potential cause of action starting the first month that it did not receive contractually obligated monthly payments from T-Mobile. *See Lutz*, 717 F.3d at 475–76.

Therefore, Town Residences cannot use fraudulent concealment to toll its contract claim under Section Ten. *See Hill*, 65 F.3d at 1335. As a result, Town Residences' damages under Section Ten are limited to those that accrued within the

six-year period: December 2018 through March 2024.[4] *See Johnson Controls, Inc. v. Jay Indus, Inc.*, 459 F.3d 717, 724 (6th Cir. 2006) (holding that each missed payment for an installment contract forms a separate cause of action within the statute of limitations period).

### 2. Conditions Precedent

T-Mobile argues that Town Residences' damages under Section Ten are further limited because Town Residences can recover only the flat, monthly fee in the Lease amendment of Section Ten – not any purported usage costs. ECF No. 28 at PageID.286. T-Mobile asserts that the damages are limited principally because Town Residences failed to satisfy Section Ten's conditions precedent of sending a written invoice to T-Mobile with sufficient documentation that T-Mobile's actual usage exceeded the flat rate. *Id.* at PageID.287.

Town Residences responds that it satisfied these conditions because the letter it sent in November 2023 requested payment for actual usage and it sent T-Mobile the detailed accountings. ECF No. 29 at PageID.335. Town Residences justifies the estimated amount by reiterating that T-Mobile's "installation of the illegal bypass"

---

[4] T-Mobile asserts that recovery is limited from December 2018 to April 2024, but T-Mobile states that "[i]n or about April of 2024, T-Mobile acknowledged its obligations under the Roof-Top Lease and started to reimburse Town Residences for its electricity usage," and T-Mobile failed to reimburse expenditures "through March 2024." ECF No. 25 at PageID.186. Upon this reading of the amended complaint, Town Residences appears to seek damages up to, but not inclusive of, April 2024.

prevented Town Residences from knowing "how much electricity [T-Mobile's] cell tower equipment used while the bypass was in operation." *Id.* As explained below, whether Town Residences satisfied these conditions precedent are questions of fact that cannot be dismissed at this stage.

### a. Legal Standard

"Under Michigan law, a condition precedent is 'a fact or event that the parties intend must take place before there is a right to performance.'" *Skyline Prods., Inc. v. Posen Const., Inc.*, 430 F. App'x 485, 490–91 (6th Cir. 2011) (quoting *Harbor Park Mkt., Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007)). If a condition precedent is not satisfied, a cause of action cannot be brought for failure of performance. *See id.* at 491 (citing *Able Demolition, Inc. v. Pontiac*, 739 N.W.2d 696, 700 (Mich. Ct. App. 2007)).

### b. Analysis

The Lease's amendment provides that "[u]pon the request of either party, the requesting party can review utility invoices and other documentation received by [Town Residences] to substantiate [T-Mobile's] usage and the requesting party may reconcile the Utility Fee with the actual electrical charges used by [T-Mobile] based upon the average kilowatt-hour rate paid by" Town Residences. ECF No. 25-2 at PageID.214. The amendment adds that T-Mobile is required to "remit any underpayment of the Utility Fee to [Town Residences] within ten (10) days

- 24 -

following [T-Mobile's] receipt of a written invoice and sufficient documentation to substantiate such underpayment." *Id.* The language of this amendment makes clear that T-Mobile must pay *following* the "receipt of a written invoice and sufficient documentation." *Id.* Because receipt of such documents "must take place before" payment, T-Mobile is correct that these are conditions precedent. *See Skyline Prods., Inc.*, 430 F. App'x at 490–91.

However, Section Ten does not define what constitutes an invoice, nor does it establish time limits for either party to request a remittance. *See* ECF No. 25-2 at PageID.214 (providing that so long as T-Mobile is "required to draw power from [Town Residences'] existing utility service," T-Mobile is also required to remit payments). Therefore, whether Town Residences' demand letter satisfies the "invoice" condition is a question of fact not appropriate for this motion to dismiss stage. *See City of Pikeville, KY v. Cebridge Acquisition,* LLC, No. 23-5770, 2024 WL 1804633 at *4 (6th Cir. Apr. 25, 2024) (holding that disputes over the meaning of a contract's unclear provisions—through ambiguous terms or silence—are issues for discovery that do not justify a dismissal under Civil Rule 12(b)(6)); *see also Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (holding that interpreting the meaning of ambiguous contract provisions "is a question of fact that is not properly answered by the court at this early stage in the proceedings").

Similarly, whether the extrapolated data constituted sufficient documentation is a question of fact. *See id.*

Although Town Residences did not send the extrapolated data with the demand letter, Town Residences plainly states in its amended complaint that it provided the data to T-Mobile: "Through communications with Crown Castle's counsel and in accordance with Section 10 of the Roof-Top Lease, Town Residences provided T-Mobile with a detailed accounting of usage rates from April 2023 through March 2024 from $.11–$.13 per kilowatt-hour and extrapolated to July of 2014." ECF No. 25 at PageID.185. T-Mobile is correct that the accounting documentation was sent later and after the demand letter, but—treating as true the allegations in the amended complaint—Town Residences did indeed provide an accounting to T-Mobile. *See id.*[5] Absent clearer instructions in the Lease amendment, this Court cannot read into the amendment a requirement that the invoice and documentation be sent simultaneously, when all that it requires is for T-Mobile to make the payment

---

[5] It is possible that when Town Residences claimed that it "provided T-Mobile with a detailed accounting," it actually provided the accounting to Crown Castle, whom it assumed would then provide to T-Mobile. If this is the case, Town Residences also explains that "[i]n response to the demand letter, counsel for Town Residences was contacted by counsel for Crown Castle who represented that communications with T-Mobile should go through Crown Castle." ECF No. 25 at PageID.185. Regardless, at the motion to dismiss stage, this Court accepts the amended complaint's factual allegations as true and draws all reasonable inferences in the Town Residences' favor. *See Lambert*, 517 F.3d at 439. Town Residences plainly stated it provided the accounting to T-Mobile, so this Court accepts this statement as true.

within ten days after receiving "a written invoice and sufficient documentation to substantiate such underpayment." ECF No. 25-2 at PageID.214. Accordingly, Town Residences' pursuit of damages for actual usage will survive this stage of the proceedings.

### D. Unjust Enrichment (Count V)

Finally, in Count V, Town Residences alleges that T-Mobile was unjustly enriched by retaining the lump sum utility funds from Crown Castle. T-Mobile argues that Town Residences cannot raise unjust enrichment when the Lease is an express contract governing the subject of this claim. ECF No. 28 at PageID.289. Town Residences responds by arguing that it can bring unjust enrichment as an alternative ground to breach-of-contract because T-Mobile "is arguing that [Town Residences'] claims are invalid due to the statute of limitations." ECF No. 29 at PageID.336–37. Town Residences is incorrect.

### *1. Legal Standard*

"Unjust enrichment is an equitable doctrine by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained." *Crestmark Bank v. Electrolux Home Prods., Inc.*, 155 F. Supp. 3d 723, 748 (E.D. Mich. 2016) (internal quotation marks and citations omitted). Generally, "[c]ourts will not apply the doctrine when an express contract already addresses the pertinent subject matter."

*Id.* (internal quotation marks and citations omitted). However, an unjust enrichment claim can survive a motion to dismiss if pleaded in the alternative to a breach of express-contract claim and the defendant has disputed, or not yet foreclosed disputing, the existence of the express contract. *See* FED. R. CIV. P. 7(a)(3); *see also Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796–97 (6th Cir. 2016).

In *Solo*, the Sixth Circuit Court held that the plaintiff could bring an unjust enrichment claim as an alternative to breach of an express contract because it was premature to foreclose the defendant potentially disputing the contract's existence in later proceedings. 819 F.3d at 796–97. Notably, the defendant answered the initial complaint with the affirmative defense "that the plaintiffs lacked standing because they were 'not in direct contractual privity with [the defendant],'" and after the plaintiff filed an amended complaint, the defendant "immediately moved for dismissal and did not file an answer to the complaint." *Id.* at 793, 797. Therefore, the Sixth Circuit Court was aware of the possibility that the defendant might later challenge the existence of a contract and did not want to prevent that argument in later proceedings. *Id.*

But when there is no dispute that an express contract exists and governs the disputed subject matter, the claim must be dismissed. *See Uselmann v. Pop*, 495 F. Supp. 3d 528, 540 (E.D. Mich. 2020) (finding that when "unclear whether the defendant would later deny the existence of a contract," an unjust enrichment claim

- 28 -

can proceed as an alternative to a breach-of-contract claim); *see also In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 635 (E.D. Mich. 2019) (distinguishing the facts of the case in which the defendant acknowledged the express contract's existence from the defendant in *Solo* keeping options open to dispute the contract's existence).

### 2. Analysis

Like the defendant in *In re General Motors* who "not only acknowledged the existence of the express Limited Warranty, [but] [was] actively trying to *enforce* that agreement," T-Mobile plainly acknowledges the existence of the Lease contract and is further seeking enforcement of certain conditions precedent to prevent Town Residences from collecting remittance of underpayment. 406 F. Supp. 3d at 635. Because T-Mobile has already acknowledged the existence of the Lease, Town Residences "may not maintain an unjust enrichment claim as an alternative to their breach of [an] express [contract]." *Johnson v. FCA U.S. LLC*, 555 F. Supp. 3d 488, 505–06 (E.D. Mich. 2021); *see also Select Rehabilitation, LLC v. Sana Health, Inc.*, No. 17-13734, 2018 WL 2009578 at *5 (E.D. Mich. Apr. 30, 2018) (denying the defendant's motion to dismiss because a "[d]efendant cannot effectively avoid suit by refusing to admit the existence of an express contract and at the same time

asserting that, because a contract is alleged, an unjust enrichment claim must fail").

For these reasons, Town Residences' unjust enrichment claim will be dismissed.[6]

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Partial Dismissal, ECF No. 28, is **DENIED IN PART** and **GRANTED IN PART** as follows:

| Count | Claim | Status |
|---|---|---|
| I | Statutory conversion | Dismissed |
| II | Common-law conversion | Dismissed |
| III | Fraudulent concealment | Dismissed |
| IV | Breach of contract under Section Two | Live |
| IV | Breach of contract under Section Ten for installments accruing before December 2018 | Dismissed |
| IV | Breach of contract Under Section Ten for installments occurring in December 2018 through March 2024 | Live |
| V | Unjust Enrichment | Dismissed |

It is further **ORDERED** that Plaintiff's damages are **LIMITED** to those pertaining to the surviving claims and cannot be tripled under MICH. COMP. LAWS § 600.2919a(1)(a) because the conversion claims are dismissed.

**IT IS SO ORDERED.**

---

[6] Town Residences argues that T-Mobile disputes the validity of the contract claims because of the statute of limitations, but this argument is misplaced. Disputing the validity of a contract itself is different from disputing the validity of a contract-related *claim*. The statute of limitations argument does not challenge whether a contract exists but rather whether a contract-related claim can be brought after a period of time.

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated:  February 6, 2026